UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WHAM-O HOLDING, LTD. AND INTERSPORT CORP. D/B/A WHAM-O,<br><br>     Plaintiffs,<br><br>    -v.-<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT,<br><br>     Defendants. | 26 Civ. 3572 (JHR)<br><br><u>ORDER</u> |

JENNIFER H. REARDEN, District Judge:

Plaintiffs filed this trademark infringement action on April 30, 2026, ECF No. 1 (Compl.), and an *ex parte* motion for a temporary restraining order ("TRO") on May 1, 2026, ECF No. 8.  Plaintiffs allege that the Defendants identified on Schedule A to the Complaint "intentionally reproduced, copied, and/or colorably imitated" Plaintiffs' "HACKY SACK Trademark."  Compl. ¶ 31.  Before acting on Plaintiffs' TRO application, the Court seeks additional information and authorities relating to the likelihood of success on the merits, specifically with respect to the strength of the mark in question and the likelihood of confusion.

"Marks are classified, in ascending order of strength, as (1) generic; (2) descriptive; (3) suggestive; [or] (4) arbitrary or fanciful."  *Tiffany & Co. v. Costco Wholesale Corp.*, 994 F. Supp. 2d 474, 480 (S.D.N.Y. 2014) (quoting *Star Industries, Inc. v. Bacardi & Co. Ltd.,* 412 F.3d 373, 384–385 (2d Cir.2005)).  "Generic marks are those consisting of words identifying the relevant category of goods or services."  *Id.*  "They are not at all distinctive and thus are not protectable under any circumstances."  *Id.*  While Plaintiffs claim that the mark "HACKY SACK" is registered and is "inherently distinctive and/or has acquired distinctiveness through

extensive use in commerce," Compl. ¶ 1, "[e]ven a statutorily incontestable mark can [] be rendered invalid and cancelled if it has come to be the generic name for the goods or services, or a portion thereof, for which it is registered." *Tiffany*, 994 F. Supp. 2d at 480.

With respect to likelihood of confusion, "[a] probability of confusion may be found when a large number of purchasers likely will be confused as to the source of the goods in question." *Streetwise Maps, Inc. v. VanDam, Inc*., 159 F.3d 739, 743 (2d Cir. 1998). This case involves many different products, offered for sale or sold by 137 different Defendants, that allegedly infringe upon the HACKY SACK mark. For example, product 45 is a "Korean Folk Game Set" consisting of several different game pieces, including one described as "Korean hacky sack," ECF No. 13 at 46, and product 116 is a t-shirt bearing the words "Eat. Sleep. Hacky Sack," *id.* at 117. "It is not a case involving a single product." *Milwaukee Electric Tool Corporation v. The individuals, corporations, limited liability companies, partnerships, and unincorporated associations identified on Schedule A*, No. 26 Civ. 2720 (GHW) (S.D.N.Y. April 3, 2026). Yet, Plaintiffs only argue that they "have submitted extensive documentation showing that Defendants are selling Infringing Products that look similar to genuine Plaintiffs' products and use infringing and counterfeit mark[s] identical to the Trademark." ECF No. 9 at 8. That documentation comprises of 138 pages of photos of various products and of the mark that is allegedly infringed. ECF No. 13. Plaintiffs do not specifically address the strength of the mark or the likelihood of confusion. Instead, they "ask[] the Court to review a series of exhibits to determine on its own that the products are infringing, without explanation." *Milwaukee*, No. 26 Civ. 2720. "The Court requires more in the context of this case." *Id.*

This is particularly true because Plaintiffs repeatedly point, as instances of alleged infringement, to a game called "Jebi Kicks," which is characterized colloquially as "Korean

hacky sack," and to other general references to "hacky sack games." *See e.g.*, ECF No. 13 at 16, 51. These examples raise the question of whether "a majority of the relevant public [has] appropriate[d] [the term] as the name of a product" such that it is now generic even if Plaintiffs previously had "establishe[d] trademark rights in [the] term ['hacky sack']."[1] *Horizon Mills Corp. v. QVC, Inc.*, 161 F. Supp. 2d 208, 213–14 (S.D.N.Y. 2001) (citing examples such as "aspirin" for acetyl salicylic acid, "cellophane" for transparent cellulose sheets and films, "escalator" for a moving stairway, "Murphy Bed" for a bed that folds into a closet, and "Thermos" for vacuum-insulated bottles). Further, "Plaintiff[s] make[] only the conclusory allegation that consumers will view," *Phoenix Ent. Partners, LLC v. J-V Successors, Inc.*, 305 F. Supp. 3d 540, 549 (S.D.N.Y. 2018) (dismissing trademark infringement claim), the term "hacky sack" in this context as an indication that the products are "originat[ing] from, [] associated with, or [] otherwise authorized by Plaintiffs." Compl. ¶ 33.

The Court defers ruling on the requested injunctive relief to provide Plaintiffs with the opportunity to submit supplemental information and authorities concerning the matters discussed herein.

SO ORDERED.

Dated: May 5, 2026
New York, New York

_____
JENNIFER H. REARDEN
United States District Judge

---

[1] Notably, Plaintiffs' trademark was registered some 45 years ago, in 1981. ECF No. 1-1.

3